May it please the court. My name is Michael Gross. I represent Jason Stockley. Mr. Stockley is the appellant. He filed a section 1983 claim with some pendent state claims in the district court. The district court dismissed all of his claims for failure to state a cause of action. A significant issue in this appeal is the standard of review. I wouldn't have expected it to be a significant issue, but at least between Mr. Stockley and Ms. Joyce there is, that is a bone of contention. The standard of review as Mr. Stockley sees it is that his pleading is, he has to allege a plausible claim that would allow him to, if proven, to have relief under section 1983. In the review of that claim, his allegations are taken, a fact, are taken as true. And if they state a plausible claim, then he should survive a motion to dismiss. Ms. Joyce has taken the position that the Supreme Court's Iqbal opinion alters that standard of review. She suggests that if she can put a more plausible spin on the facts alleged in the complaint, that she should win. That's not, Iqbal doesn't say that. If it did, who would need juries? You'd be resolving cases by who can make the most convincing argument about what the facts in a case, in a complaint mean. That's just, Iqbal doesn't say that. That's not the standard. The standard is those allegations are taken as true. It's mandatory for the district court to grant the pleader the benefit of reasonable inferences that can be drawn from the facts that are alleged. And so what Mr. Stockley had to do was to file a complaint that alleged actionable claims under section 1983 or under state law and malicious prosecution and defamation causes of action. And he did that. Speaking of your claim, I wonder, could I ask you please, do you think that you're making out a Fourth Amendment claim here rather than a substantive due process? I think that the opinion that's cited in the Rule 28J letter, as I read the opinion, it doesn't change the, it doesn't affect the viability of the claim that Mr. Stockley has alleged. What he has alleged is that the inadequate investigation, and I think we're talking about the claim against Officer Deacon here, that the claim against Officer Deacon is a claim that is founded on inadequate investigation and misrepresentation of the concealment of material facts regarding probable cause so that a probable cause warrant, I'm sorry, so that an arrest warrant was issued. If there had been adequate investigation, in fact, there was more than adequate investigation actually done. Well, the gravamen of your complaint, even though you mentioned it, is not really the arrest, but things that followed from that. You're not really complaining. Your complaint against this gentleman doesn't focus on your client's detention, isn't that right? It's other consequences. Well, the detention was part of the consequences. So why is this not a Fourth Amendment claim? The Fourth Amendment, as I understand it, is applicable to the States through the Fourteenth Amendment. So I do think that the detention part of his complaint arises directly under the Fourth Amendment. But the array of consequences for the conduct alleged against Officer Deacon includes not just the arrest and... That's what I mean. I understand that. How long was he detained? What's the record on that? His detention was for... I don't know how long the detention was. I'll be able to tell you in my rebuttal time. It was relatively brief. Okay, so I'll be quiet here in just a second, but you're suggesting that maybe we have to bifurcate this part of the case into a Fourth Amendment claim and a substantive due process claim. I'm not sure what the purport of these cases in the 28-J letter might be. In the day or two that I've had to process that, I haven't found an effect that those cases should have on this case. Thank you. Well, isn't the effect that what you pled was a substantive due process claim? I'm sorry, Your Honor, I didn't hear. Isn't the effect of these cases is that you pled a substantive due process claim rather than a Fourth Amendment claim? Isn't the effect to make the claims substantive due process claims? No, no. As I understand the argument, the argument is what you pled was a substantive due process, but these cases say that it doesn't arise under substantive due process. It arises under the Fourth Amendment. I think that even in a Fourth Amendment analysis, the allegations that he's made would comprise a Fourth Amendment claim. It's just there's more consequence than just the unreasonable seizure claim. The consequence, he never would have been prosecuted. He never would have been arrested. He would not have been put through the ordeal that he was put through if there hadn't been an arrest warrant issued. And if the probable cause circumstances had been adequately presented to Judge Mullen in the State Court, there wouldn't have been an arrest warrant issued under the allegations of the complaint. The description that Officer Deacon gave to Judge Mullen in his affidavit, which was prepared by Ms. Joyce according to the allegations of the complaint, was an altogether different event than the event that was described and is very well documented, but is described in the allegations of the complaint. What Officer Deacon said to Judge Mullen to get his arrest warrant was that Mr. Joyce and I'm sorry, Mr. Stockley and his partner were engaged in a high-speed chase of Mr. Smith. That during the course of that chase, Mr. Stockley made the colorful comment that he made about what was going to happen, that Mr. Smith was going to be killed, that they were going to kill Mr. Smith. And that when Mr. Smith slowed his car to a stop, as if to surrender is the implication, Mr. Stockley got out of the police vehicle, walked up to the driver's window and shot him five times and killed him. That's not what happened. That's not what the complaint describes, nor is it what dash cam video and other sources actually show happened, but I'll stick to the complaint. The complaint describes a totally different event. Mr. Stockley and Mr. Bianchi encountered Mr. Smith after they saw him make a hand-to-hand drug transaction on a fast food restaurant parking lot. They tried to block his car from, when he got into his car, they tried to block it so they could apprehend him. He got into the car and backed into the police car repeatedly, slammed the car on the side of him repeatedly, managed to get himself out of the parking space. In the course of doing that, both officers had drawn their weapons and both officers saw a gun on the passenger seat of his car. As he escaped from that parking space, he struck Mr. Stockley's hand, which is holding a gun, and he went out into city traffic. He led the officers on a 60 to 80 mile per hour chase. And in the course of that chase, Mr. Stockley made the remark that he made. Now that remark could have meant any of at least three things reasonably that I can come up with. One, I'm an assassin and when I get the opportunity I'm going to do it. We're in a police SUV chasing a guy who's trying desperately to escape, who is desperate not to be arrested as proven by what he did on the parking lot. We're chasing him at a high rate of speed through city traffic. This is not going to end gently. He's going to crash into something and we're on his tail at 60 or 80 miles an hour. We're going to drive right up over the top of his car. Or more likely, in my opinion, three, there are two of us, we're wearing Kevlar, we have guns, we're trained in how to use them. He's one desperate man who also has a gun and doesn't want to be apprehended. And the chase is going to end at some point and he's going to shoot at us and he's going to get killed. Any one of those three explanations is reasonable. When you want to figure out which one is implausible, you go to what happened once to Mr. Smith, who did not slow his car to a stop. He crashed into a curb, blew out both of his driver's side tires and broke his axle. He wasn't going anywhere anymore and it wasn't voluntary. Mr. Stockley and Mr. Bianchi got out of their car. They walked up to the driver's side of Mr. Smith's car. This is winter. Mr. Stockley is wearing winter gloves. His gun remained in his holster. He knows that Mr. Smith has a gun and he spends 15 seconds on the dash cam video, and according to bystanders, as pled in the complaint, he spends 15 seconds risking his life in order to avoid harm coming to Mr. Smith. So that at least makes a plausible claim that whatever his comment during the investigation was not a failure. Your claim is not a failure to investigate claim, is it? The investigation, I think you said a minute ago, was complete. It was an extraordinary investigation done by five law enforcement and prosecuting agencies. Your claim is what? Omitting the exculpatory information in the arrest warrant application? That's the basis of your claim? That's a good part of the basis of the claim. He omitted exculpatory information that any reasonable person would know, that a judge would want to know to be able to evaluate the circumstances for a probable cause. And there is a case from this court that directly addresses that conduct and says it's actionable. What case is that? I think I do have it. I'm getting used to cataract surgery. It's in the brief, but I'll have to have it during the rebuttal portion. If this were in the context of the criminal prosecution itself, this would be a Franks claim. I'm sorry? A Franks claim, right? Correct. Franks v. Delaware. That's correct. What Officer Deacon did is to present a version of events that failed to tell Judge Mullen what the totality of the circumstances were, and in particular he omitted information that would have precluded a reasonable judge from issuing an arrest warrant. Well, do you think, sorry, do you think that the district court did a proper job of reconstructing from your point of view what that affidavit should have said? There's more information in the complaint than there is in the district court's opinion, but it was a remarkably thorough opinion of recapitulating what the complaint said. What it should have said, as I understand it, the district court said, okay, let's put all this stuff that you think should have been in this application in it, and let's see if it nevertheless, even with all the exculpatory material, makes that a case for probable cause. Is that what the district court did? That's correct, Your Honor. Do you have any difficulty with that reconstruction? I could nitpick a couple of things, and I think we did in the brief, but by and large our complaint with the district court is the way it applied the law to the complaint. And I don't think that the, the complaint with the district court would be just the way, primarily the way the court applied the law, the standard of review for a motion to dismiss under Rule 12b-6 to this complaint. Mr. Gross, can we go back to Ms. Joyce for a second? You'll agree with me that she is entitled to absolute immunity for any of her prosecutorial decisions, right? Yeah, I agree. We said in the complaint... What evidence is there of something wrong with an investigative action? What she did that was investigative was this. As I've said, there was a remarkably thorough investigation done by several law enforcement agencies, prosecutors' offices, including Ms. Joyce's office in 2011 and 2012. The unanimous conclusion of all of those agencies was there was no crime here, nothing to prosecute. There was no prosecution. Several years later, Ms. Joyce announced in press conferences and in courts that, I'm talking about press conferences, though, that she had new evidence, that she had acquired new evidence, and that that evidence proved that Mr. Stockley had committed first-degree murder in the death of Mr. Smith. There was no new evidence. We've alleged that, and, in fact, we've also alleged all of the statements by people involved in the investigation in the later case. There never was any new evidence. Isn't that a prosecutorial decision, though? She's entitled to make... She has absolute immunity for the prosecutorial decision that enough investigation has been done, but that's not what she did. She didn't say, I went out and interviewed Joe Smith, and Joe Smith said X, right? All that we've alleged that she said was that I have obtained new evidence. We also allege that she claimed to have conducted an investigation, but the heart of the allegation is that she claimed to have new evidence that proved that Mr. Stockley was guilty of first-degree murder. And how that became investigative was, not only did she claim to have done an investigation that she hadn't done, but then she needed to protect herself from her lie being revealed. You just said she didn't do an investigation. Well, we have said, we don't know how, she didn't get any new evidence. That's what we know that she claimed to have conducted an investigation. And when an investigation by the Forest Investigation Unit, the special police department unit that investigates police-involved shootings, under her protocol, that unit had to investigate before a prosecutorial decision could be made. They took that file. The unit took that file. They had it for one day before they were told, send it back, she's going to charge him no matter what. And what would have happened under the allegations of the complaint if competent police had investigated the case again in 2016 is there was no new evidence. Her lie would have been revealed. So she didn't just investigate, she substituted herself for the police. She killed the investigation that was part of her own protocol in order to protect her lie. That's the allegation of the complaint. And that isn't investigation in the conventional sense. But that is usurpation of the investigation function. And you can say she decided, I have enough evidence, I don't want any more, but that's not all she did. Well, do you have any case that takes that outside of the realm of absolute immunity? Under Twombly and Ippol, but I think it's outside the realm of absolutely protected prosecutorial activity, is conduct by a prosecutor that is not part of the traditional judicial role of a prosecuting attorney. And it is no part of the traditional role of a prosecuting attorney to falsely announce to the community from which every juror in a case is going to be drawn that there is new evidence that proves the defendant guilty of this crime of which he has in the past been effectively exonerated. That conduct inevitably affected the mentality, affected the bias or lack of bias of prospective jurors in the case. I'm almost out of time. Would you like to reserve your rebuttal time? Thank you, Your Honor. May it please the Court, Counsel Dave Luce on behalf of Jennifer Joyce. Unless the Court has any questions, I wanted to take my time and make a couple comments about the reply brief to which I have not had the opportunity to reply. My first observation about the reply brief is regarding the second claim that Mr. Stockley makes against Ms. Joyce regarding her supposedly false public statements. As the Court knows, in order to state a substantive due process claim, he needs to allege, one, a fundamental right, and two, that it was violated by conduct that shocks the conscience. In the reply brief at page 19, plaintiff says the fundamental right that he alleged in his complaint was the right to a fair trial by an impartial jury. He cites the appendix at page 13 through 16 to support the claim that he made that allegation in his complaint. It's not there. Nowhere in his complaint does he allege that the fundamental right he was pursuing in his substantive due process claim was a right to a fair trial by an impartial jury. In fact, Judge Shaw noted this in his opinion at page 13. He said, plaintiff's complaint does not identify what fundamental right was that he alleged false statements to the media and to the public. We were all under the impression that this was a reputational claim. So Judge Shaw issued an order that said you can't recover for reputational damage under a substantive due process claim. You don't have a property or a liberty interest in your reputation. That's what our brief said. That's what Judge Shaw said. There really isn't any debate about that. There's been no contrary argument. What we're left with here is a contention made for the first time on appeal. Never presented to Judge Shaw, not part of the record, that the fundamental right that is being protected or that the claim seeks to protect is the right to a fair trial by an impartial jury. Even if we were to allow that claim to survive, despite its not having been made below, the claim still fails. The second element of a substantive due process claim is a requirement that the conduct shock the conscience. Plaintiff cites no case in which a court has found that a pre-trial media statement was so outrageous that it shocked the conscience and supports a substantive due process claim. He cites Taberger and the infamous Sam Shepard case. Neither of those were 1983 cases. Both involved prosecutorial misconduct and more to the point misconduct by the trial court and failing to rein in the prosecutor. But neither was a 1983 case. What does shock the conscience mean? It's a very high standard, requires significant culpability. The Supreme Court has made various iterations. It must be the most egregious official conduct. It must be conduct that violates the decencies of civilized conduct. It must be conduct that is so brutal and offensive as to not comport with traditional ideas of fair play and decency. What is alleged in this case is that Ms. Joyce, as a public official, announced that she was filing a charge against a person who she had an obligation to believe was guilty. You can't file as a prosecutor. You're required to have a belief that the defendant is guilty. And she supposedly made this new evidence comment in connection with announcing that charge. Your Honors, that simply is not conduct that shocks the conscience. It cannot support a substantive due process claim. Well, just a point of information. I thought the case was not tried to a jury. Ultimately, the case, Mr. Stockley waived his right to a trial by jury, yes. What do you think that does to this claim that we just heard that this statement by the prosecutor about new evidence contaminated the jury, prospective jury pool? Sure. I think it's very detrimental to this claim. He had a right to a jury trial. He would have had a right to voir dire that panel. He would have a right to have the judge exclude people for a cause who might have been infected by this new evidence comment. He could have pursued a jury trial and very likely with the protections that are afforded at the criminal stage would have had an impartial jury. He chose not to. And now he's claiming that this sort of stray random comment is what has cost him his right to an impartial jury trial. I think the fact that he waived his right is highly detrimental to his pursuit of that claim, Judge. No allegations that it affected Judge Wilson? I'm sorry? No allegations that the statement affected Judge Wilson in the trial? None, Judge. I think they're quite happy with Judge Wilson's approach to the case. I'm for nothing critical of Judge Wilson's opinion. The second issue I want to briefly address is this notion that we have argued for a new or different standard of review on a motion to dismiss. We have not. What our brief simply says is Iqbal and Twombly require this sort of two-part analysis. First, what facts are there that deserve the presumption of truth? And second, with those facts in mind, has a plausible cause of action been stated? As to plausibility, both Iqbal and Twombly absolutely look at this alternate explanation analysis. Our brief cites Iqbal on this point. In error, I cited to page 652. The actual citation should be 682. But they definitely went into this alternate analysis. But for our purposes, the point is moot. We never argued that this claim should be dismissed because there was some alternate plausible analysis of the factual allegations of his complaint. What we argued was there are no factual allegations in his complaint to support the cause of action. We relied on the first prong of Twombly and Iqbal. And it all gets back to this question of whether or not the complaint actually alleges investigatory conduct such that Ms. Joyce is not entitled to absolute immunity. Where in the complaint does it do this? What he says is she held a press conference. Well, that's not investigatory conduct. She made statements at a press conference. That's not interviewing witnesses. That's not going to the crime scene. That's not investigatory conduct. She met with protesters. Again, that's not investigatory conduct. And finally, that she supposedly terminated the force investigation unit's investigation, which is a theme we see repeatedly in the complaint. What the complaint says is when she made the decision to charge Mr. Stockley, that investigation shut down. So what he's saying is her decision to charge is the basis of his substance of due process claim. She has absolute immunity for the decision to charge. She has absolute immunity to decide that the force investigation unit investigation wasn't necessary in her view, that enough investigation had happened, that the reason over case specifically says that that is the essence of what a prosecutor does. And that is why we claim, and Judge Shaw found, that when you really look at the complaint, there just aren't any allegations of true investigative conduct. There's this bare, naked assertion that she conducted her own investigation, which is contradicted, by the way, by assertions in the complaint that she didn't conduct any investigation, that she squashed investigations. She bypassed investigations. When you read the complaint as a whole, there is no factual allegation of investigatory conduct and mischoices entitled to absolute immunity. Could one reasonably infer that obtaining new evidence meant that she was investigating? Well, it all depends on the word new. And again, it's new and newly available are the allegations in the complaint. New to her, new to the entire case, we don't know. The complaint doesn't specify. But however, assume that she had something new, it didn't necessarily come about by investigatory conduct. Somebody could have come to her with an admission. But there's no factual allegation about how she acquired that and no factual allegation that she engaged in investigatory conduct to support the due process claim. Unless there are further questions, I'm going to cede the rest of my time to Ms. McGowan. May it please the Court. Erin McGowan on behalf of the appellees Kirk Deacon and the City of St. Louis. The Court should affirm the dismissal of Appellant's complaint because Mr. Deacon and the City of St. Louis appellant failed to state a claim against appellees. I'm going to briefly state the allegations relevant to the claims against Deacon. Following the shooting of Mr. Smith, it's alleged that Mr. Deacon signed a probable cause statement in May of 2016, which was then relied upon by a state court judge to issue a warrant for first degree murder. The complaint also alleges that Deacon was once plaintiff's police supervisor and had demonstrated animosity towards him and that he disliked him and bore ill will towards him. In count one of the complaint, plaintiff alleges that Deacon falsely attested that Smith's car was slowing to a stop prior to the shooting, which the appellant claims falsely suggested that Smith was attempting to surrender prior to the shooting. He further claims that Deacon admitted other exculpatory material facts from the probable cause statement. Significantly, the appellant does not allege at any point in the complaint that Mr. Deacon lied about anything in the probable cause statement other than the fact that Smith's car was slowing to a stop. That is the only alleged falsehood he claims was contained in the probable cause statement. First, this court should find that the appellant alleged facts insufficient to state a claim under 1983 against Deacon. Although it's unclear from the face of the complaint in his memorandum in opposition to Deacon's motion to dismiss, the appellant clarified that his 1983 claim against Deacon in count one asserts a substantive due process violation. There was no fourth amendment violation asserted before the district court to be clear, and indeed the issue appellant presents before this court for review here is whether or not the district court erred in dismissing Mr. Stockley's Mr. Deacon for due process violations. Could I counsel that I have a kind of an elementary question, and that is if a person alleges in his or her complaint certain facts which in fact amount to a constitutional violation, what difference does it make what label he puts on those facts? Why do we care, in other words, as a functional matter, whether the claim is stated as a fourth amendment claim or substantive due process claim? The appellant has not brought a fourth amendment claim before the district court or this court, and I think that was an issue that was similar to the claim brought in Albright, and I believe the Supreme Court in Albright said that in that case the plaintiff had attempted to bring a substantive due process claim. The court ultimately concluded that he had not raised a substantive, he could not state a substantive due process claim for prosecution without probable cause, and the court declined to consider whether or not the plaintiff had a fourth, a viable fourth amendment claim because that was not before the court. Well, do you think that if the, this is a very short probable cause statement, I think you would have to concede, very brief. If the information, if it was supplemented with the information that is alleged to have been omitted and it read in keeping with Judge Shaw's description, do you think it would support a probable cause finding? No, it would not. The district court, of course, reconstructed the probable cause statement containing all of the omissions that the appellant alleged were inappropriately included or excluded from the statement. Again, the only false fact that is alleged that is contained in the probable cause statement is the fact that Smith's car was slowing to a stop prior to the appellant approaching the car and shooting. The trial court correctly found that that fact was neither necessary nor material to the probable cause determination in light of the material unchallenged allegations in the probable cause statement, which of course were. You don't just consider the alleged false statement, you also consider the alleged omissions, right? Correct, yes. That are material. Even considering the alleged exculpatory statements that were omitted, those statements are completely immaterial to the finding of probable cause in this case. A reconstructed probable cause statement would still support probable cause. The facts that were allegedly found sufficient for the finding of probable cause were the statement by the appellant that he was going to kill this expletive, don't you know it, and the fact that he fired five shots that struck and ultimately killed Mr. Smith. Nothing that the appellant alleges that Deakin supposedly lied about in the probable cause statement or omitted negates the existence of probable cause. The fact, the alleged fact that the officer stood at the window of the vehicle for 15 seconds? Yes, that's alleged that that was omitted. Was moving backwards as he discharged his weapon? The trial court correctly found that that fact was immaterial to the fact that the appellant had announced his intent to kill the suspect. Do you really think that a judge would, given all that information describing a police-involved shooting, do you really think a judge would find probable cause for the arrest of the officer? Yes, certainly. When you supply all that information, with the exception of the statement made during the chase, I just question whether a judge, given all that information, would view this as a matter, a criminal matter, based on that information alone. Yes, certainly given the statement that was made during the pursuit, there were shots fired by the appellant at the vehicle as it fled, the statement of intent to kill the suspect, and then finally the firing of shots. Yes, that supports probable cause, and the trial court correctly determined that those were the material facts that supported probable cause and that a reconstructed probable cause affidavit would not negate those material facts. Counsel, I think there's an allegation that Mr. Deakin purposely ignored evidence of Mr. Stockley's innocence. Does that stay the claim? No, it does not. Under Albright, actually, directing the court's attention to Winfrey v. Rogers, which was a Fifth Circuit 2018 case, there's no violation of a constitutional right by knowing a reckless inclusion of false statements in support of a warrant unless the allegedly false statement is necessary to the finding of probable cause. Here, the plaintiffs, the appellee, have not identified a case where a substantive due process violation was found based on an insufficient recitation of the totality of the circumstances. And just to reiterate, it's our position that this claim was brought under the substantive due process. That is, under substantive due process, that's the right that the appellant is alleging was violated here. In the alternative, Mr. Deakin is also entitled to qualified immunity because arguable probable cause existed for his arrest, for the appellant's arrest. Again, the only alleged false fact contained in the statement is that the car was slowing to a stop prior to the appellant approaching the car, and the district court correctly found that that statement was immaterial to the other facts that I have recited. And Mr. Deakin certainly did not violate any clearly established law. Again, there's no court, no case identified by the district court that said that a substantive due process violation can be based on an insufficient recitation of the totality of the circumstances. And he certainly could not have been on notice that he was violating clearly established rights because in Albrecht v. Oliver, the Supreme Court ruled that prosecutions without probable cause do not violate substantive due process rights. Could I follow up, counsel, for a moment, please, with Judge Shepard's question? Looking at this reconstructed complaint and deciding whether it's adequate to support probable cause, do we ask ourselves whether a particular judge would have thought that it stated probable cause or whether an objectively reasonable judge would have thought that it stated probable cause or whether it's not impossible but impossible that some judge would have found probable cause? What are we supposed to ask ourselves? I believe the standard would be what a objectively reasonable judge would have concluded. Could have done? Correct. Okay. So, moving on to the malicious prosecution claim. The court should find that the appellant has also alleged facts insufficient to state a state law malicious prosecution claim. One of the elements in Missouri for a malicious prosecution claim is lack of probable cause for filing a criminal prosecution. Again, the claims here fail because the allegations show that probable cause existed, and that's evident on the face of the complaint. Appellant points to the statement in the probable cause statement, again, that there was some kind of distinction to be made between the car slowing to a stop and crashing. That is the only alleged falsehood, and that is immaterial in the context of the other allegation. And the district court correctly concluded that a reconstructed affidavit would objectively support a finding of probable cause that appellant had committed a criminal offense. Plaintiff also fails to allege facts sufficient to state a claim of municipal liability against the city. He has failed to identify a policy customer practice that caused an alleged constitutional violation, and PEMBAR is inapplicable because a charging decision is not a guiding principle or procedure. I see my time has elapsed. Thank you very much for your time, Your Honors. Very well. Thank you, Ms. McGowan. Mr. Gross, your rebuttal. The authority that I didn't have at hand regarding the constitutional violation inherent in not representing the totality of the circumstances to the state warrant judge, state court warrant judge, it's three cases that are cited in the brief. One is Aikens. One is Johnson. One is Jacobs. The Aikens site is 588 Federal 3rd, 1178. And what that case, what this court said in that case is it recognized that a police officer's purposeful exclusion of, quote, evidence suggesting the defendant's innocence, close quote, indicates reckless or intentional failure to investigate, quote, that shocks the conscience, close quote. The Johnson site is 903 Federal 3rd 76, I'm sorry, 766. And the Aikens, the Jacobs site, I only have part of it at hand, but it's in volume 986 of Federal 2nd. And what Jacobs said was that the officer's responsibility is to present the probable cause court, the warrant court, with, quote, any reason, with any fact that, quote, any reasonable person would have known was the kind of thing the judge would wish to know, close quote. There were two different events described, one in the probable cause statement, probable cause affidavit, and one in the complaint. They're two different events, altogether different. One of them was sufficient to get a warrant issued, properly so, because there was enough alleged in the affidavit to support probable cause. Once you fill in the rest of the details, I can't imagine a judge issuing an arrest warrant. This is, that story is a story of a police officer risking his life to avoid harm be falling. How much, how much what I will, what I'll call exculpatory information does an officer have to put in the complaint, in the affidavit? I mean, for instance, the fact that there's a complaint here that he didn't, he didn't reveal that DNA is not often found on guns anyway. I mean, is that something that, that the officer has, is duty bound to include in an affidavit? I think, your honor, that when you, I think it has to be a case by case determination because of the nature of the issue. And when you break it down, item by item within the case, each individual item might not sound like something you have to tell the warrant judge. But when you compare the event that was described. But my particular question has to do with this DNA search. I, I think that they, that they, yeah, I think you had to, you had to tell the judge that, that the DNA, that the absence of Mr. Smith's DNA from the gun didn't prove anything. Or more correctly, you shouldn't have told. The officer's DNA was on there, right? That's correct, your honor. You do recover DNA from guns. It's, it's, well, first of all, it's, it's, it is a given fact in this case that Mr. Stockley was directed to remove Mr. Smith's gun from the. So his, his DNA, if he shed DNA, it was going to be on the gun. The circuit attorney's office routinely, for years, throughout Ms. Joyce's administration, before her and since her, opposes defense lawyers attempting to introduce evidence that their client's DNA was not on a weapon or not on another surface because it doesn't prove anything. All right, thank you. So would I be standing here feeling the way I feel about this case if the only thing that, that. I was just trying to understand what, where, what, where the border might be, where the boundary might be, but I think. And I think the reason that it's a tough call for the judge is, is expressed in the Jacobs case. You got to, you got to give the judge what a reasonable person would know, a judge would want to know. And it's tough. And I think it has to be case by case. Thank you. Thank you, your honor. Very well. Counsel, the court appreciates your appearance and arguments today. The case will be submitted and decided in due course. Thank you.